UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                    :

PEDRO D. NIEBLAS-LOVE,             :

                     Plaintiff,        :

                     -v-            :

NEW YORK CITY HOUSING AUTHORITY, et al.,   :

                    Defendants.     :

--------------------------------------------------------------------X

14-CV-5444 (JMF)

OPINION AND ORDER

**JESSE M. FURMAN, United States District Judge:**

      Plaintiff Pedro D. Nieblas-Love, who brings this action *pro se*, was employed by the New York City Housing Authority ("NYCHA") as a janitor for about ten weeks in 2013 before his probationary employment was terminated. Plaintiff brings a slew of claims against NYCHA and NYCHA employees Jeffery Otero, Efrain Diaz, Russell Hartfield, and Joshua Colon, alleging principally that they discriminated against him on the basis of race, national origin, and disability and that they retaliated against him for complaining of discrimination during the course of his employment. In particular, Plaintiff pursues claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law (the "NYSHRL"), the New York City Human Rights Law (the "NYCHRL"), and the New York Correction Law, as well as state law claims for negligent and intentional infliction of emotional distress, aiding and abetting, and supervisor liability. Defendants and Plaintiff now cross-move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Plaintiff's claims; Plaintiff also moves, pursuant to Rule 23, for class certification. For the

reasons discussed below, both of Plaintiff's motions are denied in their entirety, while

Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The relevant facts, taken from the Amended Complaint and materials submitted in

connection with the pending motions, are either undisputed or described in the light most

favorable to Plaintiff.  *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

On July 8, 2013, NYCHA hired Plaintiff on a probationary basis as a "Caretaker J," a

position responsible for janitorial work in NYCHA developments.  (Rule 56.1 Statement (Docket

No. 52) ("Pl.'s SOF") ¶ 1).  Caretaker Js are generally assigned specific floors within a building

with a schedule of tasks to be performed each day.  (Defs.' Rule 56.1 Statement Supp. Their

Mot. Summ. J. (Docket No. 60) ("Defs.' SOF") ¶¶ 7-8).  NYCHA assigned Plaintiff to work at

Isaacs Houses in Manhattan, where — at all relevant times — Defendant Diaz was the Property

Manager, Defendant Hartfield was the Property Maintenance Supervisor, and Defendant Otero

was the Supervisor of Caretakers.  (*Id.* ¶ 6).  On July 16, 2013, Otero assigned Plaintiff to the

thirteen lower floors of 1780 First Avenue, part of the Isaacs Houses.  (Pl.'s SOF ¶¶ 2-3; Defs.'

SOF ¶¶ 5-6, 11-12).  Defendant Colon, another Caretaker J, was assigned to the same building.

(Def's SOF ¶ 6).  From the very beginning of his employment, Plaintiff had an antagonistic

relationship with Otero, confronting him about "his public mistreatment of workers and arbitrary

decision making" and "bully[ing]."  (Pl.'s SOF ¶¶ 2, 5).  Shortly after he began working at Isaacs

Houses, Plaintiff informed Otero that he had diabetes and an enlarged heart.  (Defs.' SOF ¶ 14).

Otero allowed Plaintiff to take breaks whenever he requested them if he needed to take

medication or go to the bathroom, but required Plaintiff to notify Otero before he took such

breaks.  (Pl.'s SOF ¶ 6).

Almost immediately after Plaintiff started working, residents of Isaacs Houses began to make complaints about his work performance.  (*See* Defs.' SOF ¶¶ 20-21, 24).  On August 12, 2013, after only about a month of probationary employment, Plaintiff filed a complaint of alleged discrimination with the Equal Employment Opportunity Commission ("EEOC").  (Pl.'s SOF ¶¶ 7-8).  On August 19, 2013, Plaintiff accused Otero of racist behavior in front of Diaz and informed them of the fact that he intended to pursue a discrimination complaint.  (*Id.* ¶ 9).  In response to Plaintiff's allegations, Diaz and Otero conducted a hearing with Plaintiff's union on August 20, 2013, at which Plaintiff was provided an opportunity to present proof of his accusations against Otero.  (*Id.* ¶ 10).  On August 21, 2013, Plaintiff received an instructional memo from Otero informing him of deficiencies in his work performance.  (Defs.' SOF ¶ 26).  It is uncontested that Plaintiff repeatedly fought and argued with Otero, made threats to Diaz about Otero, and sometimes refused direct instructions from Otero.  (*Id.* ¶ 30-31).

On the morning of September 10, 2013, Plaintiff confronted Colon in the compactor room of 1780 First Avenue, accusing him of moving garbage to Plaintiff's side of the room.  (Pl.'s SOF ¶ 17).  Otero, Diaz, and eventually Hartfield were called to break up the argument that then ensued between Colon and Plaintiff, which quickly became heated and confrontational.  (*Id.*).  Later that day, Diaz prepared a memorandum requesting Plaintiff's termination.  (Diaz Decl., Ex. 1).  Diaz stated that Plaintiff was uncooperative and resented receiving instructions from supervisors and specifically cited his interactions with Plaintiff on September 10th and August 19th as support for the termination request.  (Decl. Efrain Diaz Supp. Defs.' Mot. Summ. J. (Docket No. 65) ("Diaz Decl.") Ex. 1).  Diaz's memorandum was sent to NYCHA Director of Manhattan Property Management, Calcedonio Bruno, who approved the request and forwarded it to NYCHA's Department of Human Resources for approval.  (Defs.' SOF ¶¶ 40-41; Diaz Decl.,

Ex. 2).  Plaintiff's employment was then terminated, effective September 16, 2013.  (Defs.' SOF ¶ 41).  Plaintiff filed this action in the Supreme Court of the County of New York on June 18, 2014, alleging numerous claims of discrimination and retaliation.  The case was subsequently removed to this Court.  (Docket No. 1).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

It is well established that courts must give "special solicitude" to *pro se* litigants in connection with motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to raise the strongest arguments that they suggest. *See, e.g.*, *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary

to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50

(2d Cir. 2003) (internal quotation marks omitted). Nor is the "duty to liberally construe a

plaintiff's [opposition] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*,

663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1] [b], at

12-61 (internal quotation marks omitted)).

### DISCUSSION

Plaintiff's Amended Complaint and briefing are far from models of clarity. His papers

often blur together numerous theories of discrimination and retaliation. Liberally construed,

however, Plaintiff alleges (1) claims of discrimination and retaliation under Title VII, the ADA,

Section 1981, the NYSHRL, and the NYCHRL; (2) a supervisor liability claim (3) a claim for

interference with protected rights; (4) negligent and intentional infliction of emotional distress

claims; and (5) a claim under New York Correction Law. The Court will address each of these

claims in turn, addressing different theories of recovery under each claim as relevant.

### A. Race and National Origin Discrimination Claims

Plaintiff claims first that Defendants took adverse employment actions against him

because of his race and national origin; specifically, he seeks relief from NYCHA under Title

VII and from all Defendants under Section 1981, the NYSHRL, and the NYCHRL. (*See* Am.

Compl. (Docket No. 26) 22-23).[1] Each of those claims is analyzed under the three-step burden-

shifting scheme articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973). *See McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015)

(summary order); *Stuart v. T-Mobile USA, Inc.*, No. 14-CV-4252 (JMF), 2015 WL 4760184, at

---

[1]     Plaintiff also brings disability discrimination claims under the NYSHRL and the
NYCHRL. (*See* Am. Compl. 22-23). Those claims are discussed below.

*8 (S.D.N.Y. Aug. 12, 2015).  Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  411 U.S. at 802.  "If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks omitted).  Once the defendant puts forward such a "legitimate, non-discriminatory reason" the plaintiff "may no longer rely on the presumption raised by the prima facie case," but rather must put forward evidence that would allow a reasonable jury to conclude that "the employer's determination was in fact the result of racial discrimination."  *Id*.  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).  That is, "[t]he plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted).  Courts evaluating the sufficiency of evidence on a motion for summary judgment must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  *Bickerstaff*, 196 F.3d at 448.  "[A]n inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist."  *Id.* (internal quotation marks and alteration omitted).

1. **Termination**

Plaintiff's primary theory of discrimination is based upon his termination.  Assuming for the sake of argument that Plaintiff has made out a *prima facie* case of discrimination based on his

termination, Defendants have plainly put forward legitimate, non-discriminatory reasons for his termination: namely, that Plaintiff resented receiving instructions from his supervisors, refused to perform certain assignments, was the subject of complaints by residents at 1780 First Avenue, and was repeatedly confrontational with, even threatening to, his supervisors.  (*See* Diaz Decl., Exs. 1-2).  The Court concludes that Plaintiff fails to put forward sufficient evidence to permit a reasonable jury to conclude by a preponderance of the evidence that those legitimate, non-discriminatory reasons were merely pretext for discrimination.  Indeed, beyond Plaintiff's own conclusory allegations, he provides no admissible evidence supporting his claim that the legitimate, non-discriminatory reasons provided for his termination were pretext for discrimination.  (Pl.'s SOF ¶ 23).  "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."  *Holcomb*, 521 F.3d at 137.  That is, it is well established that a plaintiff must do more than "cite to their mistreatment and ask the court to conclude that it must have been related to their race."  *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).

The only evidence Plaintiff points to that could even remotely suggest discriminatory animus is his claim that Otero made racist remarks to him and treated him unfairly during the course of his employment.  (*See* Aff. Supp. Mot. Summ. J. (Docket No. 49) ("Pl.'s Mem.") ¶ 14).  But nothing in the record suggests that Otero was involved in the decision to terminate him — to the contrary, both Plaintiff's own allegations and the record indicate that the decision to terminate Plaintiff began with the memorandum prepared by Diaz based on his firsthand observations of Plaintiff's insubordinate behavior.  (*See* Diaz Decl., Ex. 1; Pl.'s SOF ¶ 18).  Without any evidence to support a causal link, evidence of Otero's allegedly racist remarks cannot support an inference that discrimination was the real reason for Plaintiff's termination.

8

And Plaintiff produces no evidence that could plausibly suggest that Diaz, Hartfield, or anyone else actually involved in the decision to terminate him might have been motivated by discriminatory animus.  Plaintiff does argue that the request for termination submitted by Director Bruno was inconsistent with the request for termination submitted by Diaz in a way that might suggest that the reasons given for his termination were pretextual.  But that is nothing more than speculation and, in any event, the premise is false.  Bruno requested that Plaintiff be terminated because he had been "uncooperative and resents receiving instructions from his supervisors."  (Diaz Decl., Ex. 2).  That summary is entirely consistent with the reasons given in Diaz's memorandum.  (*See id.*, Ex. 1 (requesting that Plaintiff be terminated because he had been "insubordinate," "showed lack of respect to the staff," and "resents receiving instructions from his supervisors")).  And although Plaintiff asserts that Diaz and Hartfield failed to follow proper procedures for termination (*see* Pl.'s SOF ¶ 19), he fails to provide any evidentiary support for those assertions, let alone evidentiary support for the conclusion that those failures are evocative of pretext or discriminatory intent.

If anything, Plaintiff's own admissions reinforce the veracity of the legitimate, non-discriminatory reasons given by Defendants for his termination.  Among other things, Plaintiff admitted that he had many arguments with Otero during his employment, including two in front of Hartfield, (Decl. Judith J. Jenkins Supp. Defs.' Mot. Summ. J. (Docket No. 63) ("Jenkins Decl."), Ex. 5 ("Pl. Tr.") at 47); and that he had a confrontation with Otero in front of Diaz on September 10, 2013, (Pl. Tr. at 86-88; *see also* Pl.'s Mem., Ex. 7 (letter from Plaintiff stating that he "became agitated and angry" with Otero and told him to "let me the f . . . alone")).  Those admissions confirm that the two incidents cited by Diaz in his memorandum took place more or less as described by Diaz and that Plaintiff aggressively confronted his supervisor Otero on

occasions beyond those two incidents.  (*See id.*, Ex. 7).  For those reasons, "the evidence, taken as a whole," does not "support[] a sufficient rational inference of discrimination" in connection with Plaintiff's termination.  *Weinstock*, 224 F.3d at 42.  Plaintiff's discriminatory termination claims under Title VII, Section 1981, the NYSHRL, and the NYCHRL must be and are therefore dismissed.[2]

### 2.  Other Discriminatory Acts

Liberally construed, Plaintiff's pleadings also raise what amounts to hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL.  (*See* Am. Compl. ¶¶ 38-48).  To prove a claim of hostile work environment under Title VII or the NYSHRL, a plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).  That showing requires a plaintiff to identify incidents that are more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks omitted).  A plaintiff's burden under the NYCHRL is somewhat lower: he or she need only put forward evidence of "unequal treatment based upon membership in a protected class."  *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 579 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).  The evidence

---

[2]     The Court recognizes that the NYCHRL is more protective than Title VII, as courts must construe the local law "broadly" and "in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Albunio v. City of N.Y.*, 16 N.Y.3d 472, 477-78 (2011); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013).  But even under the NYCHRL's more liberal standards, Plaintiff's discriminatory termination claims fail as a matter of law, as a plaintiff "still bears the burden of showing that the conduct [complained of] is caused by a discriminatory motive."  *Id.* at 110; *see also Stuart*, 2015 WL 4760184, at *8.

Plaintiff puts forward in support of his hostile work environment claims is insufficient to meet

even the lower burdens applicable to the NYCHRL.  For one thing, many of the allegations

Plaintiff makes in support of his hostile work environment claims are unsupported by the record.

For example, all of Plaintiff's allegations about Colon's conduct are unsupported.  Although

Plaintiff alleges that Colon moved garbage and debris into Plaintiff's work area and spilled a

bucket of water on a floor assigned to Plaintiff, he admitted during his deposition that he neither

saw Colon do any of those acts nor heard Otero tell Colon to do any of these acts.  (Pl.'s Tr. 78,

82-83).  His allegations appear to be founded on nothing more than his sense that Colon was

friendly with Otero and that Colon was therefore "Otero's man."  (*See* Pl.'s Tr. 78).  That sort of

unadorned "speculation and conjecture is insufficient" to overcome an otherwise meritorious

motion for summary judgment.  *Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d

266, 269 n.5 (2d Cir. 2015).  And while Plaintiff at least claims to have witnessed Colon moving

trash to his side of the compactor room on September 10, 2013, he offers nothing but bare

speculation to link that behavior to any discriminatory (or retaliatory) motive or intent.  Those

allegations, founded on nothing more than Plaintiff's self-serving *ipse dixit*, are also insufficient

to defeat a motion for summary judgment.  *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d

Cir. 1996) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party

resisting summary judgment.").[3]

      Plaintiff's other allegations of discriminatory conduct are insufficient as a matter of law

to support a hostile work environment claim under Title VII, the NYSHRL, and the NYCHRL.

Plaintiff claims that Otero used racial slurs during heated arguments they had about Otero's

---

[3]      To the extent Plaintiff also means to bring retaliation claims based on the same
allegations, those claims fail for the same reasons.

management style — during which Plaintiff himself used racial slurs with respect to Otero.  (Pl.

Tr. 48, 51-52).  At most, however, those allegations amount to isolated and episodic incidents of

discriminatory language that are not sufficient to support a hostile work environment claim under

any of the laws at issue.  *See, e.g.*, *Smith v. New Venture Gear, Inc.*, 319 F. App'x 52, 56 (2d Cir.

2009) (summary order) ("[I]solated or episodic incidents involving racial slurs or other

discriminatory conduct . . . [do] not rise to the level of severity or pervasiveness needed to

support a hostile work environment claim." (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*,

180 F.3d 426, 437 (2d Cir. 1999)); *see also Alfano*, 294 F.3d at 373; *Williams v. NYCHA*, 872

N.Y.S.2d 27, 41 (1st Dep't 2009) (recognizing that a defendant may defeat a hostile work

environment claim under the NYCHRL by showing "that the conduct complained of consists of

nothing more than what a reasonable victim of discrimination would consider petty slights and

trivial inconveniences" (internal quotation marks omitted)).  The record also reflects that Otero

was the subject of complaints from other employees, but none of those complaints alleged

discrimination; Plaintiff himself describes them as being only about Otero's generally aggressive

behavior.  (*See* Pl.'s Mem., Ex. 7 (stating that Otero "had numerous complaints filed against him,

because of his bully's [sic] behavior")).  Finally, Plaintiff claims that Otero did not communicate

with Plaintiff in Spanish even though he allowed other employees to do so.  But Otero explained

— and Plaintiff does not dispute — that he did not treat Plaintiff differently from other

employees in that regard: He spoke Spanish with employees at Isaacs Houses who were

predominantly Spanish-speaking and spoke English to all other employees, including Plaintiff.

(Defs.' SOF ¶ 18; *see* Pl.'s 56.1 Statement of Disputed Factual Issues (Docket No. 73) ¶ 18).

That sort of language preference policy, by itself, does not discriminate on the basis of any

protected classification.  *See, e.g.*, *Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 263

(S.D.N.Y. 2000) ("Classification on the basis of language does not by itself identify members of a suspect class and would not support an inference of intentional national origin discrimination." (internal quotation marks omitted)).

For those reasons, the Court concludes that Plaintiff fails as a matter of law to put forward evidence that would establish discriminatory behavior of the "severity or pervasiveness necessary to establish a hostile work environment claim" under Title VII and the NYSHRL. *Lawless v. TWC Media Sols., Inc.*, 487 F. App'x 613, 618 (2d Cir. 2015) (summary order).  In fact, it falls short even of the more forgiving standards under the NYCHRL.  *See Williams*, 872 N.Y.S.2d at 41 (observing that the NYCHRL "assure[s] employers that summary judgment will still be available" where the alleged discriminatory conduct "could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences"); *see also Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 49 (S.D.N.Y. 2009) (observing that the NYCHRL does not alter "the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56").

## B.  Retaliation Claims

Next, Plaintiff alleges that the decision to terminate his employment, the decision to assign him to 1780 First Avenue, and various alleged acts of harassment were retaliatory, raising claims under Title VII, Section 1981, the NYSHRL, and the NYCHRL.  Plaintiff's claims under Title VII, Section 1981, and the NYSHRL are also governed by the *McDonnell Douglas* burden-shifting framework.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  "To make out a prima facie case of retaliation, a plaintiff must make four showings: that '(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse

action and the protected activity.'"  *Id.* (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)).  The elements of a *prima facie* case of retaliation under the NYCHRL are identical, "except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity."  *Leon v. Columbia Univ. Med. Ctr.*, No. 11-CV-8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks omitted).  "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action."  *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001).  If the employer carries that burden, then the burden shifts back to the plaintiff, who must establish "that the employer's action was, in fact, motivated by discriminatory retaliation."  *Id.*  Significantly, a plaintiff alleging retaliation in violation of Title VII must show at the final step of the analysis that retaliation was a "but-for" cause of the adverse action, not simply a "substantial" or "motivating" factor in the employer's decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S. —, 113 S. Ct. 2517, 2526, 2533 (2013).  "But-for" causation does not, however, require proof that retaliation was the only cause of the employer's action — it is enough that the adverse action would not have occurred in the absence of the retaliatory motive.  *Id.* at 2533.

### 1.  Termination

Defendants argue first that Plaintiff's retaliatory termination claim fails because "he can put forth no admissible evidence that Diaz or his other supervisors knew he filed the complaint at the time his termination was requested."  (Mem. Law Defs. Supp. Their Mot. Summ. J. (Docket No. 69) ("Defs.' Mem.") 10-11).  But Diaz was indisputably aware that Plaintiff *intended* to file a complaint when he requested Plaintiff's termination.  (Diaz Decl., Ex. 1).  And in any event,

informal complaints to supervisors about purportedly discriminatory activity are also protected

activity.  *See Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 364 (S.D.N.Y. 2006).  Notably,

Diaz himself made clear that he had received at least one informal complaint from Plaintiff about

Otero's allegedly unlawful discriminatory behavior.  (Diaz Decl., Ex. 1).  In the alternative,

Defendants contend that Plaintiff fails to put forward sufficient evidence to demonstrate the

requisite causal link between his protected activities and his termination.  (Defs.' Mem. 11).

Defendants are certainly correct that the mere fact that Plaintiff was terminated several weeks

after he filed his complaint is not necessarily sufficient to demonstrate causation (*id.*), but

Plaintiff's retaliation claims are supported by more than temporal proximity.  Most significantly,

Diaz's memorandum requesting Plaintiff's termination explicitly invokes Plaintiff's intent to file

a complaint with the Department of Equal Opportunity ("DEO") in support of the requested

termination.  Specifically, Diaz cited the "incident" on August 19, 2013 — when Plaintiff told

him that Otero had mistreated him because of his race and national origin and that he intended to

"sue him and report him to DEO" — as a "prior incident" showing Plaintiff's "uncooperative"

behavior and distaste for "receiving instructions from his supervisor."  (*See* Diaz Decl., Ex. 1).

　　　　In light of Diaz's memorandum alone, the Court cannot say as a matter of law that

Plaintiff's retaliation claims fail.  Nor, however, can it say as a matter of law that Plaintiff will

prevail on his retaliation claims.  Indeed, there are substantial reasons to believe that he will not

ultimately be able to prove that Defendants were "motivated by prohibited retaliation," *Gordon*

*v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (internal quotation marks and alterations

omitted), let alone that retaliation was a "but-for" cause of the adverse action, *Nassar*, 113 S. Ct.

at 2533.  After all, Plaintiff himself admits that he was the subject of complaints by residents,

that he refused to perform certain assignments, and that he had an antagonistic relationship with

his co-workers and supervisors, and a jury could reasonably conclude that those reasons —
rather than any desire to retaliate for Plaintiff's complaints about discrimination — motivated his
termination.  It follows that both Defendants' motion for summary judgment on Plaintiff's
retaliation claims, and Plaintiff's cross-motion for summary judgment on those same claims,
must be denied.  From that conclusion, it follows further that Defendants' motion for summary
judgment on Plaintiff's claim for aiding and abetting discriminatory acts under the NYSHRL
must be and is denied.  (*See* Defs.' Mem. 19-20 (arguing that the aiding-and-abetting claim fails
because Plaintiff does not "allege facts sufficient to establish a claim of violation under the
NYSHRL")).

### 2.  Other Theories of Retaliation

Separately, Plaintiff appears to allege that Otero retaliated against him by assigning him
to 1780 First Avenue, supposedly the worst assignment in the Isaacs Houses.  (Am Compl.
¶¶ 16-17).  Specifically, Plaintiff claims that Otero did so in retaliation for confronting him
"about his arbitrary decision making, inadequate communication skills and public mistreatment
of workers."  (*Id.*).  These allegations are not sufficient to establish a claim of retaliation.  For
each of Plaintiff's claims, "protected activity" means action taken to protest or oppose statutorily
prohibited discrimination.  *See Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 134-35 (2d
Cir. 1999); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 n.11 (2004).  Plaintiff does
not allege that his confrontation with Otero had anything to do with statutorily prohibited
discrimination.  Instead, Plaintiff claims that he confronted Otero about his "poor decision
making," "poor communication skills," and "his public mistreatment of workers in Isaac
Houses" — that is, Otero's managerial style and perceived ineffectiveness as a supervisor.  (Pl.'s
Mem. 30).  Thus, even assuming for the sake of argument that Otero's decision to assign

Plaintiff to 1780 First Avenue was in "retaliation" for those complaints, Plaintiff's various

retaliation claims on that score fail as a matter of law because Plaintiff fails to show that he

engaged in protected activity.  *See Villar v. City of N.Y.*, No. 09-CV-7400 (DAB), 2015 WL

5707125 at *21 n.11, — F. Supp. 3d — (S.D.N.Y. Sept. 29, 2015) ("[W]hile complaints about

conduct clearly prohibited by the statute need not mention discrimination or use particular

language, ambiguous complaints that do not make the employer aware of alleged discriminatory

misconduct do not constitute protected activity." (internal quotation marks omitted)).

In any event, Plaintiff's retaliation claims based on his work assignment fail for the

independent reason that Plaintiff fails to establish that his work assignment amounted to an

adverse employment action.  A change in work conditions of the kind Plaintiff describes can

amount to an adverse employment action, but only it if is "more disruptive than a mere

inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d

Cir. 2003).  Examples of such a "materially adverse change in the terms and conditions of

employment" include "a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, [or] significantly diminished material

responsibilities." *Sanders v. N.Y.C. Human Res. Admin*., 361 F.3d 749, 755 (2d Cir. 2004)

(internal quotations and citations omitted).  Here, Plaintiff fails to put forward evidence

demonstrating that his assignment to 1780 First Avenue was anything more than a "mere

inconvenience or an alteration of job responsibilities."  Plaintiff does allege that 1780 First

Avenue "is called by the workers the 'Kinta Kunte'" because it is where "Otero sent African-

Americans, Hispanics of black skin color, and/or anybody which complaint about his reign of

terror."  (Pl.'s Mem. 4).  But Plaintiff submits no evidence to support that allegation.  In fact,

Plaintiff's own testimony directly refutes it: Plaintiff stated during his deposition that several of

the *best* work assignments in all of Isaacs Houses are in 1780 First Avenue and that Otero

assigned some of his favorite subordinates, including Colon, to that building.  (Pl.'s Tr. 41, 44).

Any claim of retaliation based on Plaintiff's work assignment is therefore dismissed.

Finally, Plaintiff suggests that Otero and/or Colon engaged in a campaign of retaliatory

behavior by pouring water on his assigned floors, leaving trash in his assigned hallways, and

responding aggressively when Plaintiff confronted them about those incidents.  Any theory of

retaliation based on those allegations must also be dismissed, substantially for the same reasons

that Plaintiff's hostile work environment claim under Title VII failed.  As discussed above,

Plaintiff admits that many of those allegations are founded only on his unsupported speculation.

(*See* Pl.'s Tr. 78, 82-83).  And even where Plaintiff does have firsthand knowledge to support his

allegations about Colon's and Otero's conduct, Plaintiff provides insufficient admissible

evidence to create a material question of fact as to whether a "causal connection exists between

the alleged adverse action[s]" and any of Plaintiff's protected activities.  *Summa*, 708 F.3d at

125.  Finally, the litany of minor aggravations and slights that Plaintiff alleges Otero and Colon

committed against him do not amount to a "materially adverse change in the terms and

conditions of employment."  *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008); *see also*

*Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) ("Examples of materially adverse

employment actions include termination of employment, a demotion evidenced by a decrease in

wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

material responsibilities."  (internal quotation marks omitted)).

## C.  Disability Discrimination Claims

Next, the Court turns to Plaintiff's disability discrimination claims, which are brought

under federal law — specifically the ADA — against NYCHA and under the NYSHRL and the

NYCHRL against all Defendants.  (*See* Am. Compl. ¶¶ 82-96, 100-105).[4]  Disability

discrimination claims under all three statutes are, like race discrimination claims, analyzed using

the burden-shifting scheme set forth in *McDonnell Douglas*.  *See McDonnell v. Schindler*

*Elevator Corp.*, No. 12-CV-4614 (VEC), 2014 WL 3512772, at *4 (S.D.N.Y. July 16, 2014); *see*

*also Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 366 (S.D.N.Y.

2011) ("In analyzing whether a plaintiff has raised a triable issue of fact as to whether her

termination was motivated by discriminatory animus under the NYCHRL, the courts have

continued to employ the familiar burden-shifting analysis of [*McDonnell Douglas*].").  As

relevant here, however, "discrimination" includes a failure to provide an employee with a

reasonable accommodation for his disability.  *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181,

184 (2d Cir. 2006); *see also* NYSHRL § 293(3)(a); N.Y. City Admin. Code § 8–107(1)(a).  To

establish a *prima facie* case based on failure to accommodate, a plaintiff must show by a

preponderance of the evidence "that (1) plaintiff is a person with a disability under the meaning

of [the relevant statute]; (2) an employer covered by the statute had notice of his disability; (3)

---

[4]      As a threshold matter, pointing to the notices they received from the EEOC, Defendants
contend that Plaintiff's ADA claims must be dismissed for failure to exhaust his administrative
remedies.  (Defs.' Mem. 3; *see* Jenkins Decl., Ex. 4).  But in the Charge of Discrimination that
Plaintiff filed with the New York State Division of Human Rights (which was attached to the
notices sent to Defendants), Plaintiff expressly indicated that he alleged discrimination based on,
among other things, "disability."  (*See* Jenkins Decl., Ex. 4 at 3).  Moreover, Plaintiff alleged in
his Charge of Discrimination that he had informed Otero that he "was diabetic" and had "an
enlarged heart" that required him to take medication and frequent breaks; that Otero had given
him work assignments that "were unbearable" given his medical condition; and that, despite
complaints to that effect, "Otero did no[t] care and told [Plaintiff] that he could not accommodate
[him]."  (*Id.*).  Accordingly, Defendants' exhaustion argument is without merit.  *See, e.g.*,
*Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001) (holding that a plaintiff may bring
suit even where he did not raise a claim in his administrative charge if the claim is "reasonably
related" to the complained of conduct — that is, "if the conduct complained of would fall within
the scope of the EEOC investigation which can reasonably be expected to grow out of the charge
that was made" (internal quotation marks omitted)).

with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. Of Onodaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (ADA); *see Vangas v. Montefiore Med. Cntr.*, 6 F. Supp. 3d 400, 412 (S.D.N.Y. 2014) (NYSHRL); *Snowden v. Trustees of Columbia Univ.*, 612 F. App'x 7, 10 (2d Cir. 2015) (summary order) (NYCHRL).  Here, even assuming for the sake of argument that Plaintiff can make out the other elements of a *prima facie* case, the Court concludes that he fails as a matter of law to establish that he was denied a reasonable accommodation by his employer.

Plaintiff admits that he was accommodated for his alleged disability — he was allowed to take as many breaks as he needed in order to take his medication or to use the restroom (*see* Pl.'s Opp'n Defs. Mot. Summ. J. (Docket No. 74) ("Pl.'s Opp'n") 14) — but argues that the accommodation he was provided was unreasonable.  First, Plaintiff contends that the accommodation provided was unreasonable because he was required to request permission from Otero before he took unscheduled breaks, which Plaintiff complains was humiliating.  (*See* Pl.'s SOF ¶ 6).  But it is well established that an employer need only provide an accommodation that is "sufficient to meet the job-related needs of the individual being accommodated" and is not require "to meet the personal preferences of disabled employees."  *Raffaele v. City of N.Y.*, No. 00-CV-3837 (DGT) (RLM), 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004) (internal quotation marks omitted).  Plaintiff's desire to take breaks without checking in with his supervisor amounts to nothing more than a personal preference, and failure to accommodate that preference cannot support a claim of unlawful discrimination.  And while Plaintiff alleges that other employees were not required to receive permission before taking unscheduled breaks, he admitted during his deposition that that was not actually the case.  (Pl.'s Tr. 117, 18).

Plaintiff's also contends that Otero refused to grant his request to transfer him to another building.  (*See* Pl.'s Opp'n 14).  Although the ADA "does require reassignment as a form of reasonable accommodation in some circumstances," an employer "need not reassign an employee if no position is vacant," and "the employer [is not] obliged to create a new position to accommodate the employee."  *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999).  In this case, however, Plaintiff provides no factual support for his contention that reassignment to a different building would have somehow accommodated his disability.  Although Plaintiff alleges that 1780 First Avenue is the hardest work assignment, he stated during his deposition that several of the *best* work assignments in all of the Isaacs Houses are in 1780 First Avenue and that Otero assigned some of his favorite subordinates, including Colon, to that building.  (Pl.'s Tr. 41-42).  Plaintiff alternatively alleges that his assignment in 1780 First Avenue was particularly difficult to clean because all of the residents with kids and pets lived on the lower thirteen floors.  (*Id.* at 41).  But that allegation is directly refuted by the record, which indicates that families with children and pets lived on all floors of 1780 First Avenue and throughout other buildings in the Isaacs Houses.  (*See* Diaz Decl. ¶ 3).  Finally, even if Plaintiff could show that reassignment would have accommodated his disability, "he has not shown that such a job existed and was vacant" and therefore "cannot make out a prima facie case of disability discrimination premised on a failure to reassign."  *Micari v. Trans World Airlines, Inc.*, 205 F.3d 1323, 1999 WL 1254518, at *1 (2d Cir. Dec. 16, 1999) (summary disposition).

The Court reaches the same conclusion with respect to Plaintiff's discrimination claims under the NYCHRL, even though it defines "reasonable accommodation" more broadly than the ADA and the NYSHRL to be any "such accommodation that can be made that shall not cause undue hardship in the conduct of the [employer's] business."  NYCHRL § 8-102(18).  "The

standard under the NYCHRL is liberal, but not boundless." *LeBlanc v. United Parcel Serv.*, No. 11-CV-6983 (KPF), 2014 WL 1407706, at *13 (S.D.N.Y. Apr. 11, 2014). Even under its permissive standard, a plaintiff must still establish a *prima facie* case by demonstrating, among other things, that the accommodation requested would actually allow plaintiff to perform (or more easily perform) "the essential functions of the job at issue." *Id.* at *17. As discussed above, Plaintiff's desire to take breaks without alerting his supervisor is a mere personal preference unrelated to the interaction between Plaintiff's disability and his ability to perform the essential functions of his job. And beyond his conclusory allegations that his work assignment was especially difficult, Plaintiff fails to establish how reassignment to a different work assignment would have allowed him to better perform his job as a Caretaker J. For those reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's failure-to-accommodate claims under the ADA, the NYCHRL, and the NYSHRL.

Plaintiff also brings claims under the ADA for retaliation and interference based on his requests for reasonable accommodation. That claim must also be dismissed. Retaliation claims under the ADA are also evaluated under the *McDonnell Douglas* burden shifting scheme. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must allege that "'(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.'" *Edwards v. Brookhaven Sci. Assocs., LLC*, 390 F. Supp. 2d 225, 232 (E.D.N.Y. 2005) (quoting *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)). Although requesting an accommodation under the ADA is protected activity for purposes of making out a *prima facie* case, *see Graham v. Women in Need, Inc.*, 13-CV-7063 (LGS), 2014 WL 2440849, at *4-5

(S.D.N.Y. May 30, 2014), Plaintiff fails to provide any evidence that could even remotely

support an inference of causation between his requests for accommodation and any adverse

employment action.  Plaintiff relies principally on alleged incidents of harassment by Otero and

Colon, but those incidents do not amount to the kind of "materially adverse change in the terms

and conditions of employment" required to support a *prima facie* case under *McDonnell*

*Douglas*.  *Mathirampuzha*, 548 F.3d at 78.  And Plaintiff provides no evidence to suggest that his

termination — which is indisputably an adverse employment action — was in any way

connected to his requests for additional accommodations.  Plaintiff's claims of retaliation and

interference under the ADA are therefore dismissed.

## D.  *Monell* and Individual Liability

Separate and apart from the arguments addressed above, Defendants argue that several

claims against particular Defendants must be dismissed for independent reasons.  First,

Defendants contend that Plaintiff's remaining Section 1981 claims against NYCHA must be

dismissed for failure to establish that any alleged misconduct took place pursuant to a policy or

practice.  It is well established that a plaintiff cannot prevail on a Section 1981 claim against a

municipality (or municipal agency, such as NYCHA) unless the alleged violation was "caused by

a custom or policy within the meaning of *Monell* and subsequent cases."  *Jett v. Dallas Indep.*

*Sch. Dist.*, 491 U.S. 701, 735-36 (1989) (discussing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436

U.S. 658 (1978)).  Thus, to recover from NYCHA pursuant to Section 1981, Plaintiff must show:

"(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3)

causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  To establish

the fifth prong of the test, a plaintiff must show a "direct causal link between a municipal policy

or custom" and the particular conduct that gives rise to his claim. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, the Court agrees that Plaintiff fails as a matter of law to establish that any of his surviving Section 1981 claims were caused by an official NYCHA policy or custom, substantially for the reasons stated in Defendants' memorandum of law.  (*See* Defs.' Mem. 13-15).  Plaintiff's remaining Section 1981 claims against NYCHA are therefore dismissed.  The Court also agrees that several of Plaintiff's claims against individual Defendants must be dismissed.  Under Section 1981, the NYSHRL, and the NYCHRL, individual liability exists only where a defendant "actually participate[d] in the conduct giving rise to a discrimination claim." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (internal quotation marks omitted); *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012); *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 412 ("Personal liability under section 1981 must be predicated on the actor's personal involvement." (internal quotation marks omitted)). Applying that standard here, the Court concludes that Plaintiff's remaining claims against Colon, namely his retaliation claims under Section 1981, the NYSHRL, and the NYCHRL, must be dismissed.  Conclusory assertions aside, Plaintiff produces no evidence linking Colon to his termination, implicating Colon in any discriminatory acts that contributed to a hostile work environment, or indicating that Colon took any action to retaliate against Plaintiff for the exercise of protected rights.

### E.  State-Law Claims

Plaintiff's remaining claims are brought exclusively under New York law.  Specifically,

he brings claims for negligent and intentional infliction of emotional distress, interference with

protected rights, supervisory liability, and for violation of the New York Correction Law.  The

Court will address each set of claims in turn.

### 1.  Negligent and Intentional Infliction of Emotional Distress

As a threshold matter, Defendants contend that Plaintiff's claims for negligent and

intentional infliction of emotional distress must be dismissed for lack of subject-matter

jurisdiction.  To the extent relevant here, New York law provides that a plaintiff may not

maintain a tort claim against a municipality unless he serves a notice of claim on the

municipality within ninety days of when the cause of action accrued.  *See* N.Y. Gen. Mun. Law.

§ 50-e.  To pass muster, the notice must include "enough information to enable the municipality

to investigate the claim adequately.  Merely providing notice of the occurrence is not adequate to

constitute notice of a particular claim.  The fact that a cause of action not mentioned in the notice

of claim arises out of the same incident as enumerated claims is not pivotal; rather, the nature of

the claim and the theory of liability are determinative."  *Fincher v. Cty. of Westchester*, 979 F.

Supp. 989, 1002-03 (S.D.N.Y. 1997) (internal citations and quotation marks omitted).  Providing

sufficient notice "is a condition precedent" to bringing suit against a municipality.  *Hardy v.*

*N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); *see also Lyles v. State*, 3

N.Y.3d 396, 400 (2004) ("[T]he State has waived its sovereign immunity against suit only to the

extent that claimants comply with the provisions of the statute.").  "Notice of claim requirements

are construed strictly by New York state courts, and failure to abide by their terms mandates

dismissal of the action" for lack of subject-matter jurisdiction.  *Am. Tel. & Tel. Co. v. N.Y.C.*

*Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (gathering cases); *see also Pristell v. New York*, 834 N.Y.S.2d 730, 730 (3d Dep't 2007).

Applying those standards here, Plaintiff's negligent and intentional infliction of emotional distress claims against NYCHA must be dismissed for lack of subject-matter jurisdiction. Although Plaintiff filed a notice of claim on December 3, 2013, that notice did not assert claims for negligent or intentional infliction of emotional distress. (*See* Jenkins Decl., Ex. 3). To the contrary, he described the nature of his claim as "wrongful termination," "employment discrimination," "negligency," and "harassment." (*Id.*). And while he did indicate that he hoped to recover for both "loss of wages" and "emotional damages" (*id.*), that was not sufficient to put NYCHA on notice of negligent and intentional infliction of emotional distress as "theor[ies] of *liability*." *Fincher*, 979 F. Supp. at 1002 (emphasis added). Keeping in mind that notice of claim requirements are to be construed strictly, the Court therefore concludes that Plaintiff's notice did not implicitly or explicitly notify NYCHA that he intended to pursue independent tort claims for negligent or intentional infliction of emotional distress. Thus, those claims against NYCHA must be dismissed.

The notice-of-claim requirement, however, does not appear to apply to Plaintiff's claims against the individual Defendants.[5] Nevertheless, his claims against them fail as a matter of law

---

[5]     That is because, as other Courts in the Circuit have held, the notice-of-claim requirement applies to claims against a municipal employee only to the extent that the employee has a right to indemnification. *See Jean-Lauren v. Hennessy*, 05-CV-1155 (JFB)(LB), 2008 WL 3049875, at *19 (E.D.N.Y. Aug. 1, 2008) (collecting cases). Because Plaintiff's emotional-distress claims are founded on conduct allegedly in violation of NYCHA's rules and regulations, the individual Defendants would not appear to have a right to indemnification. *See* N.Y. Gen. Mun. Law § 50-k(3) (providing for indemnification of a municipal employee if his liability arose from conduct "within the scope of his employment and in the discharge of his duties" and "not in violation of any rule or regulation of his agency," as long as the injury was not caused by "intentional wrongdoing or recklessness on the part of the employee").

on the merits.  First, a claim for negligent infliction of emotional distress under New York law

has four elements: "(1) breach of a duty owed to plaintiff, which breach either unreasonably

endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety; (2)

extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and

(4) severe emotional distress."  *Walia v. Holder*, 59 F. Supp. 3d 492, 512 (E.D.N.Y. 2014).

"New York courts have expressed a 'longstanding reluctance to recognize causes of action for

negligent infliction of emotional distress, especially in cases where the plaintiff suffered no

independent physical or economic injury.'"  *Colo. Capital Invs., Inc. v. Owens*, 304 F. App'x

906, 908 (2d Cir. 2008) (summary order) (quoting *Broadnax v. Gonzalez*, 2 N.Y.3d 148, 153

(2004)).  Here, Plaintiff fails to allege that he suffered any independent physical or economic

injury as a result of the emotional distress he allegedly suffered.  Additionally, he fails to allege

facts that would demonstrate that any Defendant endangered his physical safety or reasonably

caused him to fear for his safety.  These failures are "fatal to his claim."  *Id.*[6]

    Second, a claim for intentional infliction of emotional distress under New York law

requires a plaintiff to establish: "(i) extreme and outrageous conduct; (ii) intent to cause, or

disregard of a substantial probability of causing, severe emotional distress; (iii) a causal

connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. N.Y.

Post Co.*, 51 N.Y.2d 115, 121 (1993).  "[T]he rigor of the outrageousness standard is well

established."  *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 530 (S.D.N.Y. 2013) (internal

---

[6]    In any event, Plaintiff's negligent infliction of emotional distress claim fails for the
independent reason that it is preempted under New York's Workers' Compensation law, which
provides "the exclusive remedy to an employee . . . when such employee is injured . . . by the
negligence or wrong of another in the same employ."  N.Y. Workers' Comp. Law § 29(6); *see
also Stevens v. New York*, 691 F. Supp. 2d 392, 397 (S.D.N.Y. 2009) (dismissing a claim of
negligent infliction of emotional distress against the plaintiff's employer as preempted under
New York Workers' Compensation Law).

quotation marks omitted).  Specifically, the "[c]onduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and recovery is only available "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation."  *Id.* (internal quotation marks omitted). In this case, there is no evidence of conduct even remotely meeting that standard.  *Cf. Seltzer v. Bayer*, 709 N.Y.S. 2d 21, 23 (1st Dep't 2000) (holding that the defendant's alleged dumping of a pile of cement, tossing of lighted cigarettes, and drawing of a swastika on his neighbor's house did not constitute conduct sufficiently outrageous to survive a motion for summary judgment); *Leibowitz v. Bank Leumi Trust Co. of N.Y.*, 548 N.Y.S. 2d 513, 521 (2d Dep't 1989) (holding that allegations of repeated derogatory, racist remarks were insufficient to establish claim).  Thus, Plaintiff's intentional infliction of emotional distress claim must also be dismissed.

## 2.  Interference with Protected Rights

Next, Defendants seek summary judgment with respect to Plaintiff's claim under New York City's Administrative Code Section 8-107(19), which provides that it is unlawful "for any person to coerce, intimidate, threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or protected pursuant to [Section 8-107]."  N.Y. City Admin. Code § 8-107(19).  "Threats are required to state a claim for violation of Admin Code § 8–107(19)."  *Sletten v. LiquidHub, Inc.*, No. 13-CV-1146 (NRB), 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (internal quotation marks omitted).  Plaintiff does not allege that Diaz, Hartfield, or Otero ever made any threats against him.  And while Plaintiff alleges that Colon threatened him every time Plaintiff confronted him about leaving bags of garbage or spilling water on Plaintiff's assigned floors, Plaintiff admits that he has no basis for accusing Colon of those acts.  (*See* Pl.'s Opp'n 18).  The right to aggressively confront a coworker with baseless

28

allegations is not a "right granted or protected pursuant to [section 8-107]."  N.Y. City Admin.

Code § 8-107(19).  Colon's alleged threats of physical violence in response to Plaintiff's

unfounded accusations are therefore not enough to save Plaintiff's claim under Section 8-107(19)

— at least not without some evidence suggesting that those threats were made "to coerce,

intimidate, threaten or interfere" with Plaintiff's exercise of a protected right.

### 3. Supervisory Liability

Plaintiff's supervisory liability claims are easily dismissed.  To establish supervisory

liability against any individual Defendant, Plaintiff would have to show, among other things, that

the Defendant "should have known of the offending employee's unlawful discriminatory conduct

yet failed to exercise reasonable diligence to prevent it."  *Sesay-Harrell v. N.Y.C. Dep't of*

*Homeless Servs.*, No. 12-CV-925 (KPF), 2013 WL 6244158, at *25 (S.D.N.Y. Dec. 2, 2013)

(internal quotation marks omitted).  Such a claim therefore sounds in negligence.  The New York

Workers' Compensation Law, however, is "the exclusive remedy to an employee . . . when such

employee is injured . . . by the negligence or wrong of another in the same employ."  N.Y.

Workers' Comp. Law § 29(6).  It follows that Plaintiff's supervisory liability claim is preempted

by the Workers' Compensation Law.  *See Yaba v. Cadwalader, Wickersham & Taft*, 931 F.

Supp. 271, 275 (S.D.N.Y. 1996) (holding that the plaintiff's "state law claim against

[defendant's] supervisory employees for their 'gross negligence'" was "barred by the New York

Workers' Compensation Law"); *see also Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)

(affirming dismissal of negligence claims asserted on the basis of an alleged hostile work

environment as barred by the New York's Workers' Compensation statute).

4. **New York Correction Law**

Plaintiff's final state-law claim — under the New York Correction Law — is also easily dismissed.  Under Section 752 of the New York Correction Law, a person may not be denied employment or fired from existing employment "by reason of the individual's having been previously convicted of one or more criminal offenses" unless "there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual."  N.Y. Corr. Law § 752; *see also id.* § 753 (enumerating factors that an employer shall consider in determining a "direct relationship" exists).  In this case, however, Plaintiff was not terminated due to his criminal conviction record.  At most, the evidence might suggest that Plaintiff's *failure to disclose* his criminal record was a factor that contributed to his termination.  (*See* Decl. Deborah Altman Supp. Defs.' Mot. Summ. J. (Docket No. 68) ¶¶ 3-4).  But termination of employment "based upon [an employee's] failure to disclose his criminal record completely and truthfully does not implicate" Section 752.  *Smith v. Kingsboro Psych. Ctr.*, 828 N.Y.S. 2d 419, 421 (2d Dep't 2006).  Plaintiff's claim under New York Correction Law Section 752 is therefore dismissed.[7]

---

[7]        In his motion for summary judgment and opposition to Defendants' motion, Plaintiff asks the Court to grant him summary judgment under New York Executive Law Section 296(16). (*See* Pl.'s Mem. 31-33; Pl.'s Opp'n 21).  That statute prohibits "any person, agency, bureau, corporation or association . . . to make any inquiry about . . . any arrest or criminal accusation of [an] individual . . . which was followed by a termination of that criminal action or proceeding in favor of such individual."  N.Y. Exec. Law § 296(16).  Plaintiff failed to assert any claim under that statute in his Amended Complaint, and has not sought leave to amend his complaint to add such a claim.  In any event, Plaintiff fails to demonstrate that any act was taken against him because of a criminal accusation that was resolved in his favor.  (*See* Defs.' SOF ¶ 43).  For those reasons, Plaintiff's motion is therefore denied and any claim under New York Executive Law Section 296(16) is dismissed.

**F.  Class Certification**

That disposes of the parties' cross-motions for summary judgment.  As noted, Plaintiff

also moves, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for class certification.

(Docket No. 72).  That motion is frivolous, substantially for the reasons stated in Defendants'

memorandum of law in opposition.  (*See* Mem. Law. Defendants Opp'n Pl.'s Mot. Class

Certification (Docket No. 82) 4-13).  Among other things, given that Plaintiff's claims turn

almost entirely on allegations of individualized treatment and that he is proceeding without a

lawyer, it is not clear that he can satisfy any of the requirements of Rule 23, let alone of those

that he would need to meet to warrant certification of a class.  *See, e.g.*, *Wal-Mart Stores, Inc. v.

Dukes*, 131 S. Ct. 2541, 2554-57 (2011) (concluding that the fact-specific nature of employees'

Title VII claims precluded class certification); *Naum v. City of N.Y.*, 94-CV-5747 (DAB), 1996

WL 140305, at *1 (S.D.N.Y. Mar. 28, 1996) (denying class certification because a plaintiff

proceeding *pro se* "is unable to 'fairly and adequately protect the interests of the class'");

*Osipova v. Home Energy Assistance Program*, 85-CV-4498 (CSH), 1985 WL 3956, at *2

(S.D.N.Y. Nov. 26, 1985) ("[T]he law is settled that *pro se* litigants cannot qualify as adequate

class representatives.").  Accordingly, Plaintiff's motion for class certification is denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motions for summary judgment and for class

certification are denied in their entirety, and Defendants' motion for summary judgment is

granted in part and denied in part.  In particular, all of Plaintiff's claims are dismissed except for

(1) his retaliation claims (except as noted above) and (2) his corresponding aiding-and-abetting

claim.  In light of the substance of those claims and the need for trial to resolve them, this Court

exercises its discretion under Title 28, United States Code, Section 1915(e)(1), and will seek to

obtain *pro bono* counsel for Plaintiff.  *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989).  Further, notwithstanding the unsuccessful mediation earlier in this case (*see* Docket No. 55), the Court believes — in light of this ruling and the possibility that Plaintiff will obtain counsel in short order — that the parties should attempt to settle the case without the need for trial.  To that end, by separate Order to be entered today, the Court is referring the case to the assigned Magistrate Judge (the Honorable Gabriel W. Gorenstein) for settlement purposes.  No later than the earlier of one week after counsel enters a notice of appearance or April 11, 2016, the parties shall contact the Chambers of Magistrate Judge Gorenstein to schedule a settlement conference as soon as possible.  In the event that the case does not settle, the Court will issue a further Order with respect to the timing and procedures leading up to trial.

The Clerk of Court is directed to terminate Docket Nos. 49, 62, and 72 and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Date: February 26, 2016
      New York, New York

_____
JESSE M. FURMAN
United States District Judge